# In re UNR INDUSTRIES, INC., et al.

## Nos. 82 B 9841, 82 B 9851.

United States District Court,
N.D. Illinois, E.D.

Nov. 7, 1984.

---

Gregory P. von Schaumburg, Securities And Exchange Comm., Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chtd., Maurice Jacobs, Greenberger, Krauss & Jacobs, Chtd., Joseph M. Russell, First National Bank of Chicago, David F. Heroy, Gardner, Carton & Douglas, Susan Pierson DeWitt, U.S. Trustee, Larry L. Thompson, Bell, Boyd & Lloyd, John F. White, McKenna, Storer, Rowe, White & Farrug, J. William Cuncannan, Defrees & Fiske, James C. Murray, Jr., Katten, Muchin, Zavis, Pearl & Galler, Winston & Strawn, Michael J. Sweeney, Sidley & Austin, James E. Spiotto, Stephen H. Pugh, Jr., Chapman & Cutler, Richard F. Levy, Levy & Erens, Robert Grant, Sonnenschein, Carlin, Nath & Rosenthal, Peter John, Phelan, Pope &

John, Tom Aries, Aries, Hoyt & Williams, Anthony Katauskas, Jacobs, Williams & Montgomery, Robert Fishman, Levit & Miller, Don Vogelsang, Reuben & Proctor, D.J. Sartorio, Haskell & Perrin, Michael Gallagher, Cassiday, Shade & Gloor, Robert Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for debtors.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The Official Creditor's Committee of Asbestos-Related Plaintiffs ("Committee") and Joseph Newton,[1] an individual asbestos claimant, have moved for an order allowing some 17,000 asbestos claims against UNR, the debtor in this case, to proceed to trial. The motion is based on one section of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "Act"), which was signed into law on July 10, 1984.

Proper resolution of this motion requires consideration of the basic jurisdictional framework of the Act. Subparagraphs (a) and (b) of new section 1334 of Title 28 give the district courts "original and exclusive jurisdiction of all *cases* under title 11." and "original but not exclusive jurisdiction of all *civil proceedings* arising under title 11 or arising in or related to a case under title 11." (emphasis supplied). Subparagraph (c)(1) of the same section allows "a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

The jurisdiction of bankruptcy judges is set forth in new section 157 of Title 28, subparagraph (a) of which allows a district court to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judge.

1. The motion of William C. Moyer, attorney for Joseph Newton, to proceed pro hac vice in this

matter is hereby granted.

Subparagraph (b) of the same section more specifically defines the bankruptcy judges' jurisdiction by providing that they "may hear and determine ... all core proceedings ...." The relevant parts of the definition of "core proceedings" contained in § 157(b)(2) are:

> (2) Core proceedings include, but are not limited to—
>
> * * * * * *
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> * * * * * *
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

The next relevant subsection, and the subsection on which the Committee and Newton rely, is § 157(b)(5), which states

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Finally, § 157(c)(1) states

> A bankruptcy judge may hear a proceeding that is not a core proceeding but

that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

The present motion raises two questions. First, does the Act mandate full trials in a district court for those asbestos plaintiffs who do not agree to another procedure for settling their claims? Second, assuming an affirmative answer to the first question, does the Act require or are there any other reasons to order such trials begin now?

## I. PRELIMINARY CONTENTIONS

 Before dealing with these questions, two threshold contentions by those opposing the motions [2] (and for simplicity's sake, all contentions in opposition to the motion will be attributed to UNR) must be answered. First, UNR argues that this motion should have been addressed in the first instance to the bankruptcy judge. To support this argument UNR contends (1) the motion requires a determination as to whether the handling of asbestos claims is a "core" proceeding, which decision is to be made by the bankruptcy judge under § 157(b)(3); and (2) allowing trials would require that the automatic stay be lifted, which again is a decision for the bankruptcy judge under § 157(b)(2)(G). Neither of these grounds has merit, so the argument fails. The question here is not whether "liquidation or estimation" of asbestos

---

2. The Court received several briefs by insurers who are defendants in the adversary action filed by UNR, 83 A 2523, etc. These briefs were apparently filed pursuant to 11 U.S.C. § 1109, which allows a party in interest to be heard on any matter in a bankruptcy proceeding. One of these briefs contained the wrong caption and docket number, and another such brief was filed over a month after the relevant due date. The Court also notes that several briefs in excess of 15 pages were filed without leave of court, and that Joseph Newton filed a second reply brief that was late, was filed in response to answers to the Committee's motion rather than Newton's own, and rather than replying to new matters raised in those answers is obviously a belated attempt to amend and revise his original reply brief. While these deviations may seem small in isolation, the size of this case compels this Court to warn the parties that in the future papers not conforming to the rules will be stricken.

claims "for purposes of distribution" is a core proceeding; § 157(b)(2)(B) makes clear they are not. The question is the proper interpretation of that section; and that question is properly addressed to this Court. Moreover, § 157(b)(5) specifies that any order for trial of personal injury and wrongful death claims is to be made by the "district court." Since a § 157(b)(5) order is what the movants seek this Court is the proper forum. Finally, there is no conflict between the authority given this Court under § 157(b)(5) and the fact that § 157(b)(2)(G) gives the authority to modify the automatic stay to the bankruptcy judge in the first instance since this Court can withdraw authority over the automatic stay on its own motion under § 157(d).

█ UNR's other threshold attack on these motions is that § 157(b)(5) does not apply to cases pending when the Act became effective. UNR argues that § 157(b)(5) must be read in conjunction with new § 1411(a) of Title 28 which protects "any right to trial by jury that an individual has with regard to a personal injury or wrongful death tort claim." Since § 157(b)(5) and § 1411(a) were enacted as parts of a single scheme to protect the right to jury trial, and section 122 of the Act expressly provides that § 1411(a) applies only prospectively, UNR concludes that § 157(b)(5) also applies only prospectively. The obvious problem with this argument is that it contradicts the plain language of section 122 of the Act, subsection (a) of which states that "[e]xcept as otherwise provided in this section, this title and the amendments made by this title shall take effect on the date of the enactment of this Act." The exceptions referred to appear in subsection (b) of the same section, but while § 1411(a) is there mentioned, § 157(b)(5) is not. Moreover, there is not, as UNR contends, any "inconsistency" in applying § 157(b)(5) but not § 1411(a) to this case. Not all district court trials are jury trials, and whether these asbestos

claims must be tried to a jury can be determined without reference to § 1411(a). It is therefore clear on the face of the statute that § 157(b)(5) applies to this case, a conclusion which renders the legislative history urged by UNR irrelevant.

## II. DOES THE ACT REQUIRE TRIALS IN THE DISTRICT COURT?

█ Turning to the first question posed above, the Act clearly requires that these asbestos claims be tried in district court rather than bankruptcy court.[3] UNR makes several arguments to avoid the plain meaning of § 157(b)(5) but none are persuasive. First, UNR argues that the trial § 157(b)(5) refers to is not a full-blown adversary proceeding but only a "summary hearing." No reason is given for reading the phrase "shall be tried" in this fashion and this Court can think of none. District courts do not conduct "summary hearings" and UNR points to no statute or rule that either authorizes this departure from normal practice or explains what procedures constitute a "summary hearing."

█ UNR's second argument is that when Congress wants to create exceptions to the automatic stay of 11 U.S.C. § 362 it does so explicitly. Since the Act made some changes to § 362 but did not add an explicit exception for personal injury and wrongful death claims, UNR concludes that the stay remains applicable to such claims despite § 157(b)(5). However, this argument takes too narrow a view of the way legislation can and is written. If Congress enacts a statute which, though not referring to the automatic stay section, can only be carried out by lifting that stay then this Court's duty would be to lift the stay and give effect to the statute. If some ambiguity in the statute were present, UNR's argument might have some force, but § 157(b)(5) is clear: the "district court *shall order* ...." Moreover, adopting UNR's reading would render § 157(b)(5) su-

---

**3.** A brief filed by Commercial Union Insurance Co. argues that to avoid violating constitutional limits on federal jurisdiction this Court must abstain, under § 1334(c)(1), in favor of the state courts in those asbestos claims that lack diversity. In view of this Court's disposition of these motions, however, that question need not be decided at this time.

perfluous. If that section could not be enforced until bankruptcy proceedings were concluded, it would no longer be needed since the stay would have ended and the bankruptcy court would no longer have the power to hold trials relating to the concluded case.

UNR's remaining argument concerns the wisdom of liquidating the asbestos claims through trial. The parties are certainly free to agree to a dispute-resolution procedure that does not involve trial, and UNR may be correct that some such procedure would be best for all concerned. However, this Court is not free to disregard the command of § 157(b)(5) that any *judicial* proceeding take the form of trial in the district court.

### III. MUST TRIALS BEGIN NOW?

■ The second, and crucial, question is when the trials commanded by § 157(b)(5) are to take place. In its reply brief the Committee argues § 157(b)(5) specifies that estimation of such claims are not core proceedings and therefore the bankruptcy court has no power to estimate those claims. Since those claims obviously *must* be estimated if the bankruptcy proceedings are to go forward, the Committee concludes that the trials mandated by § 157(b)(5) must have been meant to serve as the estimation method for those claims and therefore those trials should begin immediately.

In response, UNR points out that § 157(c)(1) allows the bankruptcy judge to in effect act as a magistrate for non-core proceedings. However, to conclude that § 157(c)(1) authorizes the bankruptcy judges to act as a magistrate with respect to these asbestos claims for all purposes would render § 157(b)(5) a nullity, which as already noted is a result to be avoided. Therefore, the Committee is correct that

§ 157(b)(5) must take effect at *some* point before final distribution of the asbestos claims.

In choosing the beginning of the estimation process as that point, however, the Committee has overlooked the express terms of § 157(b)(2)(B). That section does not exclude from the definition of core proceedings estimation of personal injury and wrongful death claims for *all* purposes, but only "for purposes of distribution." Estimation of such claims for other purposes, such as "confirming a plan" (§ 157(b)(2)(B)), apparently remains a core proceeding for the bankruptcy judge. It is therefore not necessary to order trials now so that these claims can be valued; the presently proceeding study by Towers, Perrin, Foster & Crosby can, in both the statutory and empirical senses, fulfill that function.[4]

■ The Committee also offers several policy reasons why the trials should begin now. Estimating these asbestos claims would require at least a hearing, asserts the Committee, and therefore allowing the bankruptcy judge to estimate the claims will not be any more efficient than ordering district court trials. This contention both understates the time and expense of trials and overstates the time and expense of the estimation process. Even should Judge Toles decide the Towers study is insufficient to accurately estimate asbestos claims and that some sort of hearing is necessary, there is no reason to believe 17,000 hearings must be held to get an accurate enough picture of the debtor's liability to asbestos victims.

The Committee also argues that trials should begin now so that when distribution time comes these plaintiffs can collect their due immediately rather than waiting until a trial can be had and concluded. This Court

4. The Committee attempts to bolster its view of § 157(b)(5) as the complete substitute for the estimation process by pointing to a statement by Senator DeConcini regarding his proposed amendments to the Act. *See* Cong.Rec. 6098–99 (daily ed. May 21, 1984). However, the analysis Senator DeConcini submitted to accompany his proposed amendments makes clear that his version of § 157(b)(5) did not include the phrase "for purposes of distribution," *id.* at 6099, and therefore his statement cannot be taken as a guide to proper interpretation of the bill as enacted.

is certainly sympathetic to the plight of asbestos victims, but is persuaded that ordering the parties to trial makes no sense until there is at least some indication of the debtor's financial health and some reason to believe that the time and expense of trials will not simply deplete the estate and leave these plaintiffs and the other creditors with empty judgments.

The Committee's final argument is that it would be unfair to allow the bankruptcy court to estimate these claims for purposes of developing a plan because that court may undervalue the claims "so that the trials to which such plaintiffs are entitled would serve only as a measure of their pro-rata share of a pie which is much too small." Committee's Reply Brief at 22. Contrary to the Committee's implication, this Court has the utmost confidence in the bankruptcy court's ability to accurately estimate the asbestos claims. Moreover, in this regard the asbestos claimants stand in the same position as any creditor with an unliquidated claim. Though problems of accuracy in estimation may be greater when personal injury and wrongful death claims are involved, nothing in the Act indicates such claims are to be treated differently from other unliquidated claims for purposes other than distribution.

## IV. CONCLUSION

To summarize, this Court interprets the Bankruptcy Amendments and Federal Judgeship Act of 1984 to require trials in the district court rather than the bankruptcy court of those asbestos claims in which the parties do not agree to a nonjudicial form of resolution. This Court is not persuaded that those trials should begin now and expresses no view as to exactly what circumstances would justify ordering trial. However, since any order pursuant to § 157(b)(5) must come from this Court, the authority to lift the automatic stay is withdrawn to the extent that lifting the stay would be necessary to order trial of the asbestos claims.

IT IS THEREFORE ORDERED that

(1) William C. Moyer is admitted pro hac vice in this case.

(2) The motions of Joseph Newton and the Official Creditors' Committee of Asbestos-Related Plaintiffs for trial of the asbestos claims are denied without prejudice.

(3) The Towers study is to proceed as planned.

(4) This Court on its own motion hereby withdraws authority to lift the automatic stay for the sole purpose of ordering the asbestos claims to trial. For all other purposes (including the carrying out of pretrial procedures in the asbestos cases) authority to modify or lift the stay remains with the bankruptcy court.