In re JOHNS–MANVILLE CORPORATION, Manville Corporation, Manville Building Materials Corporation, Manville Forest Products Corporation, Manville International Corporation, Manville Export Corporation, Manville Products Corporation, Johns-Manville Amiante Canada Inc., Johns-Manville Canada Inc., Johns-Manville International Corporation, Johns-Manville Sales Corporation, Manville International Canada, Inc., Manville Canada Inc., Manville Investment Corporation, Manville Properties Corporation, Allan-Deane Corporation, Ken-Caryl Ranch Corporation, Manville Idaho Inc., Manville Service Corporation, Manville Canada Service Inc., Sunbelt Contractors, Inc., Debtors.

**Earl ROBERTS, Movant,**

v.

**JOHNS–MANVILLE CORPORATION, et al., Respondents.**

**Nos. 82–B–11656(BRL) to 82–B–11676(BRL)**

United States District Court, S.D. New York.

Dec. 6, 1984.

See also, D.C., 45 B.R. 827.

George M. Rosenberg, Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg, Los Angeles, Cal., for movant; Jerrold T. Doros, Doros & Blessey, P.C., New York City, of counsel.

Lowell Gordon Harriss, Miriam C. Cedarbaum, Lynn E. Busath, Robert F. D'Emilia, Davis Polk & Wardwell, New York City, for respondents.

## AMENDED MEMORANDUM OPINION AND ORDER

KEENAN, District Judge:

In October, 1978, Earl Roberts ("Roberts"), the movant in this action, underwent surgery for lung cancer caused by his exposure to asbestos-containing products. These products had been manufactured and/or sold by, among other companies, Johns-Manville Corporation and its subsidiaries and affiliates (collectively "Manville"), during the course of Roberts' employment in California.

In August, 1979, Roberts filed a civil action against Manville and other manufacturers and sellers of asbestos-containing products in the Superior Court of the State of California. The complaint alleged that Manville and the other defendants were legally responsible for causing his asbestos disease and resulting damages. That action was stayed as against Manville on August 26, 1982, pursuant to title 11, section 362 of the United States Code, when Manville filed a petition under chapter 11 of the Bankruptcy Reform Act of 1978 (the "Code") in the United States Bankruptcy Court for the Southern District of New York.

Subsequently, Roberts' claims against all other defendants in the California Superior Court civil action were settled. The claims against Manville remain unresolved pursuant to the automatic stay provision of section 362 of the Code.

Roberts moved, pursuant to section 157(b)(5) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Public Law No. 98–353 (the "1984 Act"), for an order transferring Roberts' claims against Manville from the bankruptcy court proceedings commenced when Manville filed a petition under chapter 11 of the Code (the "Manville case") to the United States District Court for the Central District of California or, in the alternative, to the United States District Court for the Southern District of New York, for the purpose of trial of these claims and of all pre-trial matters and proceedings related thereto. This motion was denied by Memorandum Opinion and Order of this Court dated August 31, 1984.

■ Roberts moved for an order granting reargument pursuant to rule 3(j) of the Rules of the United States District Court for the Southern District of New York, and to correct judicial mistakes pursuant to rule 60(b)(1) of the Federal Rules of Civil Procedure. That motion is denied. For the purpose of clarifying apparent confusions arising out of the Court's August 31, 1984 opinion, however, the Court hereby amends its earlier opinion.[1]

Section 157(b)(5) of the 1984 Act provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Pursuant to this section, trial of personal injury or wrongful death claims related to a bankruptcy proceeding must be held in the district courts. The section, however, does not mandate that all personal injury and wrongful death claims be tried. It merely sets forth the procedure by which the forum for trial shall be designated for those asbestos claimants who do not agree to another procedure for settling their claims.[2] That forum shall be the district court in which the bankruptcy case is pending or in which the claim arose. The section makes clear that trials to resolve such claims cannot be held in the bankruptcy court.

The issue before this Court is whether section 157(b)(5) mandates an immediate trial of Roberts' personal injury claim in either this district or the Central District of California.[3] For the purposes of clarity, the Court notes that, despite the urging of the parties, the propriety of the Manville filing, the issue whether asbestos claimants have a constitutional or statutory right to a trial by jury and the meaning of the Supreme Court's decision in *Northern Pipeline Company v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), are not issues that are properly before the Court on this motion. The Court, therefore, confines its ruling to the meaning of section 157(b)(5) and its application to Roberts' claim at the present time.

In interpreting the meaning of section 157(b)(5), this Court reads the section in the context of the statute as a whole. If read in isolation, the section appears to mandate that all personal injury or wrongful death claims arising in or related to a bankruptcy

---

1. In issuing this opinion, the Court relies on the written submissions filed with regard to this motion and the argument held on August 21, 1984. The Court does not rely on any of the numerous attempts by Roberts' New York counsel to influence the Court through *ex parte* telephone communications. The Court also notes that this opinion and the opinion dated August 31, 1984 are the only rulings the Court has made with regard to the motions filed by Roberts. At no time has the Court approved a modified service list or made any other ruling with regard to the Roberts' motions.

2. Despite the urging of Roberts' counsel, the Court does not find that section 157(b)(5) deprives the parties of the freedom to agree to a dispute-resolution procedure that does not involve trial. *See In re UNR Industries*, 45 B.R. 322 (N.D.Ill.1984).

3. By his motion, Roberts makes clear that he intends to reject any consensual resolution of his claim. For purposes of this motion, therefore, the Court must assume that consensual resolution of this claim is not an option.

case be tried and that the trial of those claims be held in the district courts. Roberts argues that, if section 157(b)(5) mandates that the claims ultimately must be tried, that the trials should commence immediately so that the judgments entered on those claims can form the basis for estimating those claims for purposes of formulating a plan as well as for determining the actual amount to which each claimant is entitled.[4] Such an interpretation, however, is unnecessary and runs contrary to other provisions of the Code and the 1984 Act.

Section 502(c) of the Code provides for the estimation of claims for the purpose of allowance if liquidation of contingent or unliquidated claims would unduly delay the administration of the case. Section 157(b)(2)(B) of the 1984 Act, however, defines the liquidation or estimation of contingent or unliquidated personal injury or wrongful death claims against the estate for purposes of distribution as non-core proceedings. Under section 157(c)(1) of the 1984 Act, such proceedings may be heard by a bankruptcy judge but the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court and any final order must be entered by the district court after *de novo* review of any findings or conclusions to which a party has specifically objected. The interpretation of section 157(b)(5) urged by Roberts would void the effect of section 502(c) with respect to personal injury and wrongful death claims and would render section 157(b)(2)(B) superfluous. A statute, however, should not be read so that one section renders another section inoperative, superfluous, void or insignificant. *See* 2A J. Sutherland, *Statutes and Statutory Construction* § 46.06 (4th ed. C. Sands 1973).

■ Under an interpretation of these sections which gives effect to all of them, section 157(b)(2)(B) ensures that only district judges enter final orders and judgments regarding the estimation or liquida-

tion of personal injury or wrongful death claims for purposes of distribution. If the liquidation is by trial, under section 157(b)(5), the trial must be held in the district court. Jurisdiction remains with the bankruptcy court, however, to make findings and conclusions for *de novo* review by the district court for the purposes of distribution when liquidation is not by trial and to estimate the claims for purposes of allowance.

■ Even assuming that section 157(b)(5) requires that all personal injury and wrongful death claims be tried in the district courts, the Court does not find that immediate withdrawal and liquidation of Roberts' claim is appropriate. Section 157(b)(2)(B) does not exclude from the definition of core proceedings estimation of personal injury and wrongful death claims for all purposes. The section is limited to estimation "for purposes of distribution." This leaves estimation for other purposes within the jurisdiction of the bankruptcy court. *See In re UNR Industries,* 45 B.R. 322 (N.D.Ill.1984). A trial is not needed, therefore, to satisfy the requirement of section 502(c) that "all claims against the debtor be converted into dollar amounts." *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 65 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5851. Thus, even if the Code and the 1984 Act require that each and every asbestos claim filed in this action eventually be tried, they do not require immediate withdrawal of those claims for trial before a reorganization plan has been confirmed.

Roberts alleges that his health is such that he will be prejudiced by delay in the liquidation of his claim and, therefore, that an immediate trial is necessary to protect his rights. Indeed, if Roberts should die before judgment has been entered on his cause of action, his estate will not be entitled under California law to recover dam-

---

**4.** He also notes that failure to try his claim immediately will result in the loss by him of substantive rights. Under California law, which governs Roberts' claim, his estate will not be

able to recover for the pain, suffering and disfigurement after his death that he allegedly suffered as a result of Manville's wrongful conduct. Calif.Prob.Code § 573.

ages for pain, suffering or disfigurement. Calif. Prob. Code § 573.

The Court is most sympathetic to Roberts' situation as it is to the plight of the thousands of asbestos victims. It does not, however, see the sense in ordering the parties to trial until a plan has been developed and until there is reason to believe that the time and expense of potentially 25,000 trials will not deplete the estate and leave other creditors with empty judgments.[5] In this regard, the Court notes that the automatic stay provision of section 362(a) of the Code was designed not only to ensure the debtor a fresh start, but also to ensure that all creditors were treated equally. These policies would not be served if 25,000 individual claimants were allowed separately and independently to proceed to trial at this time. Nothing in the Code or 1984 Act indicates that personal injury and wrongful death claims are to be treated any differently than any other unliquidated claims for purposes other than distribution. *See In re UNR Industries, supra.* Until this stage in the case is reached, therefore, the Court finds that the motion to withdraw is premature. Roberts' motion is dismissed without prejudice.

SO ORDERED.

5. The Court is aware that Manville is a solvent, ongoing company. It is unclear, however, what the litigation costs of 25,000 personal injury trials would do to Manville's financial health. The Court is also aware that the fairness and propriety of the Manville reorganization have been challenged. Indeed, in connection with a parallel motion brought by Joseph L. Newton, another asbestos claimant, and supported by the Committee of Asbestos Related Litigants and/or Creditors (the "Committee"), the Committee

urges the Court to interpret the enactment of section 157(b)(5) as Congress' condemnation of the Manville reorganization. The Court, however, is reluctant to parse the Code and 1984 Act to find a means of defeating the Manville reorganization. This reluctance in no way reflects the Court's feelings concerning the profound social, political, economic and moral issues raised by the Manville filing, but rather reflects the limited role of the judiciary with regard to legislation.