**In the Matter of POOLE FUNERAL CHAPEL, INC. aka Poole Funeral Home, Debtor.**

**Matter of Ernest D. POOLE, Debtor.**

**Matter of GREENWOOD CEMETERY, INC. aka Woodlawn Cemetery, Debtor.**

**Bankruptcy Nos. 86–2368, 86–2404 and 86–2406.**

United States Bankruptcy Court, N.D. Alabama, S.D.

July 30, 1986.

Jerry W. Schoel, Birmingham, Ala., for movants.

David A. Sullivan, Birmingham, Ala., for debtors/defendants.

James G. Henderson, Birmingham, Ala., Trustee of the Estate of Greenwood Cemetery, Inc.

## MEMORANDUM OPINION

CLIFFORD FULFORD, Bankruptcy Judge.

These three cases are before the Court on motions of Ethel M. Riley and Camilla Franklin ("Movants") for relief from the automatic stay. They seek permission to try their cases in the Circuit Court of Jefferson County, Alabama seeking damages

for the desecration of the graves and remains of deceased relatives.[1] Movants are plaintiffs in two of seven civil actions stating essentially similar claims. Another case (Floyd, et al.) differs from the others in claiming that the body of the deceased was improperly prepared and was infested with maggots before burial.[2] Two other plaintiffs seek damages for personal injuries received in an automobile collision with a Poole Funeral Chapel vehicle.

Movants concede that the bankruptcy judge has authority to estimate their claims under Section 502(c) of the Bankruptcy Code[3] for the purposes of confirming a plan under Chapter 11. 28 U.S.C. § 157(b)(2)(B).[4] But they point out that this same section 157(b)(2)(B) denies the bankruptcy court the right to liquidate or estimate their claims for purposes of distribution because they are contingent or unliquidated personal injury tort claims. The debtors argue that the claims are not personal injury tort claims within the intent of Congress when it enacted section 157(b)(2)(B). It is necessary to resolve that issue first.

It is probable that Congress never considered claims for the desecration of graves and dead bodies one way or the other when it excepted "personal injury tort and wrongful death claims" from the bankruptcy court's jurisdiction in section 157(b)(2)(B) and (O)[5], and section

---

1. Movants seek damages for mental anguish. Alabama case law recognized such a cause of action as early as 1895. *Bessemer Land & Improvement Co. v. Jenkins,* 111 Ala. 135, 18 So. 565 (1895); and *Bonham v. Loeb,* 107 Ala. 604, 18 So. 300 (1895). *Payne v. Alabama Cemetery Ass'n, Inc.,* 413 So.2d 1067 (Ala.1982), holds that the action may be grounded in a non-trespass tort as well as in trespass. *Code of Ala.* 1975, § 13A–11–13, makes it a Class A misdemeanor to abuse a corpse "in a way that would outrage ordinary family sensibilities." Earlier criminal code sections defined specific crimes involving removal of dead bodies and violation of graves. *Code of Alabama* 1940 (Recomp.1958), Tit. 14, §§ 108, *et seq.* Some of these offenses were felonies, and the civil action might have been but was not based on *Code of Ala.* 1975, § 6–5–370 and its predecessors (civil action for injury amounting to a felony). It seems, instead, to have been a forerunner of the more inclusive tort of outrage first recognized in *American Road Serv. Co. v. Inmon,* 394 So.2d 361 (Ala.1981). *See and cf. Cates v. Taylor,* 428 So.2d 637 (Ala.1983), finding an outrage count supported by evidence of defendants' interference, thirty minutes before the funeral, with burial in a cemetery lot previously offered for that purpose.

2. The counts in these eight cases state various causes of action based on breach of contract or warranty, misrepresentation, fraud, reckless disregard for the truth, outrage, negligence, wantonness, trespass on the cemetery lot, trespass on the body of the deceased, willful and malicious injury, alter ego, and negligent and wanton inspection and analysis of grave sites. Only the breach of contract or warranty counts do not sound in tort, and Alabama law allows damages for mental anguish in some breach of contract cases. *B & M Homes, Inc. v. Hogan,* 376 So.2d 667 (Ala.1979) (breach of contract for construction of home). Recovery is now allowed for mental suffering caused by tortious conduct without any physical injury. *Taylor v. Baptist Medical Center, Inc.,* 400 So.2d 369 (Ala. 1981).

3. Section 502(c) of the Bankruptcy Code (Title 11, United States Code) reads:
   (c) There shall be estimated for purpose of allowance under this section—
   (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
   (2) any right to payment arising from a right to an equitable remedy for breach of performance.
   Before the 1984 amendments, estimation under section 502(c)(1) was required if fixing or liquidation would unduly delay the *closing* (instead of administration) of the case.

4. 28 U.S.C. § 157(b)(2)(B) reads in pertinent part:
   (2) Core proceedings include, but are not limited to—
   (B) ... estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11[.]

5. 28 U.S.C. § 157(b)(2)(O) reads:
   (2) Core proceedings include, but are not limited to—

   .    .    .    .    .

   (O) Other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

157(b)(5)[6]. Note also section 157(b)(4) which excepts non-core proceedings (i.e., personal injury tort and wrongful death claims) from the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2). If Congress had intended to restrict "personal injury tort ... claims" to those which damaged the bodies of living claimants, it could have done as it did in section 522(d)(11)(D) of the Bankruptcy Code where it exempted to the debtor up to $7,500 "on account of personal bodily injury...." It is thus clear that Congress knew how to be restrictive in its choice of language concerning personal injury torts. When Congress chose the unrestricted description of "personal injury tort ... claims", it must have intended that these words be interpreted broadly.[7] So read, they encompass the civil actions brought by Movants and the plaintiffs in the five other similar cases. There is no question that the two automobile collision cases are personal injury tort claims, and the other case is at least partially tort based.

Unfortunately, this does not end the inquiry into Congressional intent in enacting section 157(b)(2)(B). There are several departures from the plain language of section 157(b)(2)(B) found in the legislative history of that section. In an analysis offered by Senator DeConcini in the Congressional Record-Senate, S 7622 (daily ed. June 19, 1984), reprinted in 9 Bankr.Serv. (L.Ed.) 73 (Supp. Apr. 1986), the following appears:

> 2. *Section 157(b)(2)(B)*. This provision provides that core proceedings include allowance or disallowance of claims against the estate or exemptions from property of the estate, but do not include liquidation or estimation of contingent or unliquidated personal injury tort claims

against the estate. Bankruptcy judges have traditionally liquidated or estimated contingent or unliquidated claims. When a claim is based on a contract, for example, of a party dealing with the debtor, the bankruptcy judge should enter final orders estimating those claims. There are good grounds, however, for requiring that any final order estimating or liquidating personal injury tort claims, such as claims arising from automobile accidents, which are claims of parties who have not voluntarily involved themselves with the debtor, be entered by an Article III district court judge. For that reason, this provision exempts such claims from the definitions of "core proceedings." Although the bankruptcy judge will enter proposed findings of fact and conclusions of law, any final order will be entered by the district judge after the district judge has considered the bankruptcy judge's proposed findings and conclusions and after *de novo* review by the district judge of those matters to which a party has timely and specifically objected.

In the Congressional Record-House, H 7493 (daily ed. June 29, 1984), reprinted in 9 Bankr.Serv. (L.Ed.) 100 (Supp. Apr. 1986), the following appears:

> Mr. KINDNESS.
>
> . . .
>
> Section 157 of the act does provide that each district court may provide that any and all cases arising under title 11 and proceedings in related cases shall be referred to the bankruptcy judges for the district. I trust that that would be interpreted to overcome the matter that I will now mention.

---

**6.** 28 U.S.C. § 157(b)(5) reads:

5) The district court shall order that personal injury tort and wrongful death claims be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

**7.** Congress' intent is critical in determining what is and what is not a personal injury tort

claim for the purpose of bankruptcy court jurisdiction. Legislative history is not helpful in making this determination. It is noted that in other contexts, "injuries to the person or personal injuries comprehend mental distress, annoyance, inconvenience, humiliation, and such other manifestations of disturbed or perturbed feelings as ordinary persons are supposed to be subject to." *Hatcher v. Southern Ry. Co.*, 191 Ala. 634, 636, 68 So. 55, 56 (1915).

In subsection (b) following thereafter, in the definition of core proceeding, it is stated that core proceedings would include allowance or disallowance of claims against the estate or exemptions from property of the estate, an estimation of claims or interest for the purpose of confirming a plan under chapter XI or XIII or [sic] title XI.

...

That subsection defining core proceedings goes on to say:

But there would not be included ... the liquidation or estimation of contingent or unliquidated personal injury, tort or wrongful death claims against the estate for purposes of distribution.

The estimation of contingent or unliquidated claims in order to allow or provide for the distribution of an estate would, of course, be a core proceeding. *I think it was intended, certainly by the conferees, that the estimation function, and thus proceeding with the distribution, would not be interfered with by the change that was wrought to deal with the personal injury court [sic] actions and wrongful death actions at the instance of the junior Senator from Ohio in the conference yesterday.*

So I would hope that if there is to arise any question in the weeks ahead about the meaning of that language that certainly the beginning part of section 157 would clarify that the district court can refer those matters to the bankruptcy judge.

(Emphasis supplied.)

Senator DeConcini's analysis, applied to the claims against these Chapter 11 debtors, is inconclusive. The plaintiffs voluntarily involved themselves with the debtors in buying a cemetery lot and contracting for the funeral and interment. As to the breach of contract or warranty aspects of their claims, there should be no impediment to the bankruptcy court's estimation and liquidation of the claims for all purposes under section 157(b)(2)(B). However, the plaintiffs did not involve themselves with the debtors, in the sense suggested by Senator DeConcini, in the desecration of the graves or removal of the bodies except as such acts constituted breaches of contract or warranty for the body's eternal resting place. As to the tort aspects of their actions, Senator DeConcini seems to say that an Article III judge must enter the final order on *de novo* review of the bankruptcy judge's proposed findings and conclusions in non-core proceedings under section 157(c)(1). The apparent conflict of this interpretation with the requirement of section 157(b)(5) that the district court try personal injury tort and wrongful death cases was not addressed.

Mr. Kindness' statement is at odds with the plain language of section 157(b)(2)(B). He told his colleagues in the House that the estimation function, and thus proceeding with the distribution, would not be interfered with by the change to deal with personal injury and wrongful death actions. See "Highlights of the Bankruptcy Amendments and Federal Judgeship Act of 1984", *Bankruptcy Code, Rules & Official Forms* (The Lawyers Co-Operative Publishing Co. & Bancroft Whitney Co., 1985), at pp. 3–4. According to Mr. Kindness, the bankruptcy court is authorized to estimate all claims for purposes of confirming a plan under Chapter 11 and 13, and to liquidate personal injury tort and wrongful death claims for purposes of distribution, all of which he understood to be core proceedings. If this is what Congress understood and intended when it enacted section 157(b)(2)(B), it would avoid some perplexing questions while raising others.

Suppose the bankruptcy judge estimates the ten personal injury tort claims at $10,000 each. The Chapter 11 debtor files a feasible plan based on those estimates. The claims are then liquidated by the district court or by the state court in jury trials and the damages are variously fixed at from $10,000 to $100,000 which is beyond the reach of the debtor's resources. What happens to the Chapter 11 plan based on the bankruptcy court's estimate? Has the bankruptcy court engaged in a useless procedure? Will the debtor be discharged

under section 1141(d)(1) of the Bankruptcy Code if his plan is confirmed on the basis of the bankruptcy court's estimates? Or must distribution await liquidation of all personal injury tort and wrongful death claims by another court having jurisdiction?[8] If so, this would certainly "unduly delay the administration of the estate" contrary to the general requirement of section 502(c)(1) of the Bankruptcy Code. Mr. Kindness' view of section 157(b)(2)(B) answers these questions nicely by permitting the bankruptcy court to distribute to the creditors on the basis of its estimates for the purposes of confirming a Chapter 11 plan. It makes good sense because there is a limit to what may be distributed no matter how much is recovered in the district court or state court, and the Chapter 11 case can proceed without the undue delay that would attend bringing ten personal injury tort cases to final judgment. On the other hand, the personal injury tort claimants are entitled to a trial by jury[9], and it is anything but clear how and by whom jury trials of such cases are to be conducted.[10]

When, as here, it is not possible to reconcile the legislative history with the statute itself, the statute must prevail because its meaning is clear. *Randall v. Loftsgaarden,* — U.S. —, —, 106 S.Ct. 3143, 3150, 92 L.Ed.2d 525 (1986). The obvious purpose of the 1984 Amendments is to prevent bankruptcy courts from trying personal injury tort and wrongful death actions. That purpose is made clear not only in section 157(b)(2)(B) but also in section 157(b)(2)(O) and section 157(b)(5).

Anomalous as it may be, strict application of the statute gives the bankruptcy court the right and duty[11], on referral by the district court, to estimate and liquidate the non-tort claims of the plaintiffs for purposes of confirming a plan under Chapter 11 and for purposes of distribution. As to the counts sounding in tort, the plaintiffs are entitled to jury trials in some court for purposes of distribution. The bankruptcy court has the right and duty only to estimate these claims for the purposes of confirming a plan under Chapter 11, and that is a core proceeding.

Judge Friendly has tellingly described the dilemma courts face in preventing overkill in multiple cases claiming punitive damages for a single course of tortious conduct. *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 838–842 (2nd Cir.1967) (hundreds of plaintiffs sued manufacturer for adverse effects of its drug, MER/29). He wrote, in footnote 11 to his opinion, *id.* 839–840:

> If there were any way in which all cases could be assembled before a single court, as in a limitation proceeding in admiralty, it might be possible for a jury to make one award to be held for appropriate distribution among all successful plaintiffs, although even as to this the difficulties are apparent. . . .

**8.** *See and cf. Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134 (3rd Cir.1982), criticized in *Treatment of Contingent and Unliquidated Claims Under the Bankruptcy Code,* Weintraub and Resnick, 15 UCC L.J. 373 (1983).

**9.** 28 U.S.C. § 1411 allows jury trials in such situations; however, it is questionable whether § 1411 applies to these cases filed before July 10, 1984, its effective date.

**10.** *See, e.g., Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Graham,* 747 F.2d 1383 (11th Cir.1984); *In re Merrill,* 594 F.2d 1064 (5th Cir.1979); *Matter of Hendon Pools of Michigan, Inc.,* 57 B.R. 801 (E.D.Mich. 1986); *Matter of McLouth Steel Corp.,* 55 B.R. 357 (E.D.Mich.1985); *In re Boss-Linco Lines, Inc.,* 55 B.R. 299 (Bkrtcy.W.D.N.Y.1985); *In re*

*Bokum Resources Corp.,* 49 B.R. 854 (Bkrtcy.D. N.M.1985); *In re O'Bannon,* 49 B.R. 763 (Bkrtcy. M.D.La.1985); *Matter of Baldwin-United Corp.,* 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985). *See also,* King, *Jurisdiction and Procedure. Under the Bankruptcy Amendments of 1984,* 38 VAND.L. REV. 675 (1985); Sabino, *Jury Trials in the Bankruptcy Court,* COMM.L.J., Aug.—Sept. 1985, at 342. *And see finally,* Proposed Bankruptcy Rule 9015 which provides for jury trials but does not say who is to conduct them.

**11.** The word "shall" in section 502 has been held to make estimation mandatory. *In re Planes, Inc,* 48 B.R. 698 (Bkrtcy.N.D.Ga.1985); and *In re McCall,* 44 B.R. 242 (Bkrtcy.E.D.Pa.1984).

Beleaguered defendants in such cases are seeking solutions in Chapter 11, as witness the asbestosis cases[12], the products liability claims in the White Motor cases[13], and the Dalkon Shield claims in the case of A.H. Robins recently filed in the Eastern District of Virginia[14]. It may well be that the bankruptcy court is the only court available to save and rehabilitate a debtor worthy of being saved and to assure that creditors are treated fairly and not subjected to the mad rush of the quickest to deplete the debtor's assets in satisfaction of their claims first to reach judgment.

Should this Court exercise the jurisdiction it has to estimate these claims for purposes of confirming a plan in the Chapter 11 cases of Poole Funeral Chapel and Ernest D. Poole?[15] Judge Hart of the United States District Court for the Northern District of Illinois considered this question in the asbestosis bankruptcy cases. He decided in well reasoned opinions that the estimation of those claims for the purpose of confirming a plan is a core proceeding for the bankruptcy judge to accomplish before lifting the stay and permitting the liquidation of the claims in other courts for purposes of distribution. *In re UNR Industries, Inc.*, 45 B.R. 322 (N.D.Ill.1984); *In re Johns-Manville Corp.*, 45 B.R. 827 (N.D.Ill.1984); and *In re Johns-Manville Corp.*, 45 B.R. 827 (N.D.Ill.1984).

The parallel between these cases and the cases *sub judice* is not in scope but in principle. Poole Funeral Chapel and Ernest D. Poole filed Chapter 11 petitions because the pending suits threatened their solvency and continued business operations. If there is liability, awards in such cases could run high. *See, e.g., Ridout's-Brown Service, Inc. v. Holloway*, 397 So.2d 125 (Ala.1981), affirming $220,000 in a similar case.

From the schedules and statements of affairs of these Chapter 11 debtors, it appears that they can present feasible plans if these tort claims do not doom them from the start. When it is apparent, as it is here, that the resources of the debtors hold no reasonable promise of satisfying multiple large demands, the focus shifts from obtaining judgments to the prospect for satisfying any judgment that might be obtained. If the demands being made by plaintiffs in these tort cases are justified, the two cases remaining in Chapter 11 can be expected to follow Greenwood Cemetery into Chapter 7.

■ The Chapter 11 debtors have not yet filed plans or disclosure statements. They say they are not liable in the desecration cases, but that the cost of trying them would exhaust their resources and force them into Chapter 7. Given the high cost of litigation today, their statement is cogent. They argue that they are entitled to an estimation that will tell them whether they have any chance to rehabilitate under Chapter 11. In the context of this case, Chapter 11 debtors should have claims against them estimated so they can determine whether *any* plan is possible. They should not be required to file a ridiculous plan in order to obtain estimations.

■ Movants argue that if their motion is not granted, they will be deprived of their constitutional right to a trial by jury. However, the estimation of claims, including the estimation of personal injury tort claims for the purpose of confirming a plan under Chapter 11, is a core proceeding as to which Movants are not entitled to a trial by jury. *Katchen v. Landy*, 382 U.S. 323,

---

**12.** *In re UNR Industries, Inc.*, 45 B.R. 322 (N.D.Ill.1984); *In re Johns-Manville Corp.*, 45 B.R. 823 (N.D.Ill.1984); and *In re Johns-Manville Corp.*, 45 B.R. 827 (N.D.Ill.1984).

**13.** *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); and *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985).

**14.** See Vol. 86, Number 4, June 1986 issue of Information and Management Bulletin of the Clerk's Division of the Administrative Office of the United States Courts, pp. 5–7.

**15.** Greenwood Cemetery is not involved in this consideration because it has been converted to Chapter 7 on its own motion.

86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re UNR Industries, Inc.*, 45 B.R. 322 (N.D.Ill. 1984); *In re Johns-Manville Corp.*, 45 B.R. 823 (N.D.Ill.1984); and *In re Johns-Manville Corp.*, 45 B.R. 827 (N.D.Ill.1984).

This Court will do what it can before turning the cases over to courts that can do what it lacks the power to do. The claims of the plaintiffs in all ten cases will be estimated without distinguishing tort and non-tort counts because it is impractical and unnecessary at this stage to do so.

This Court will also determine whether any of these claims should be excepted from the discharge of Ernest D. Poole under section 523(a) of the Bankruptcy Code [16].

When these matters have been concluded, the reference to this Court may be withdrawn so the District Court can determine whether to try the tort claims under section 157(b)(5), discretionarily abstain under 28 U.S.C. § 1334(c)(1), or lift the stay and permit the cases to be tried in state court [17].

An order will be entered denying the motions of Ethel M. Riley and Camilla Franklin for relief from the automatic stay as to all three debtors. As to Greenwood Cemetery, the motions will be reconsidered, if they are renewed, after the estimation hearings have been concluded. If Greenwood Cemetery is liable, its assets could possibly be considered in any plan proposed by the Chapter 11 debtors.

Notices will be issued for hearings to estimate the claims of all plaintiffs who have sued Poole Funeral Chapel, Inc., and Ernest D. Poole; and to show cause why such claims should not be discharged as to Ernest D. Poole. Also included in the estimates to be made will be the non-tort claims against Greenwood Cemetery.

**16.** Greenwood Cemetery Co., Inc., does not qualify for discharge. Section 727, Bankruptcy Code. Exceptions to discharge under section 523 apply only to individual debtors.

**17.** Mandatory abstention is ruled out by 28 U.S.C. § 157(b)(4). The district court may either try the cases or permit them to be tried and liquidated by the courts in which they are pending. *In re White Motor Credit,* 761 F.2d 270, 273–74 (6th Cir.1985).