86 F.3d 1146
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Cheryl ADAMS, Richard Waugh, Brent Adams, Ronald Ring,
Patricia Adams, Robert Ravitz, Carrie Burke,
Weldon Adams, Elizabeth Targee, Tina
Levesque and Melissa Smith
Rapa, Plaintiffs--Appellants,
v.
CUMBERLAND FARMS, INC. and Lance Curley, et al.,
Defendants--Appellees.
 No. 95-1736.
 United States Court of Appeals, First Circuit.
 May 7, 1996.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge ]
 Stanley R. Cohen for appellant.
 Barbara D. Gilmore, with whom Kathleen Provost and Sullivan & Worcester, were on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before TORRUELLA, C.J., BOWNES, and Senior Circuit Judge, and STAHL, Circuit Judge.
 STAHL, Circuit Judge.
 
 
 1
 This appeal involves the review of an order entered by the bankruptcy court that effectively estimated and discharged the appellants' claims. The appellants, Cheryl Adams and ten other former employees of the debtor (collectively "Adams"), claim that the bankruptcy court lacked authority to enter the order because the claims constituted "personal injury tort claims." We affirm.
 
 I.
 Background
 
 2
 Cheryl Adams and ten other former employees of Cumberland Farms, Inc. ("CFI"), filed proofs of claim against CFI in the bankruptcy court for the District of Massachusetts. The claims stemmed from a pending civil action in which Adams alleged that various CFI officers and supervisors had conspired to recoup inventory losses by falsely accusing Adams and other low-level CFI employees of stealing money and merchandise from CFI stores. Adams further alleged that these same CFI officials had knowingly coerced Adams and other employees into confessing to the alleged thefts notwithstanding that Adams and the other employees had not committed them. The complaint in the case asserted claims of false imprisonment, wrongful termination, malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, and violation of Massachusetts civil rights laws (collectively the "loss prevention claims").
 
 
 3
 In 1993, CFI reached a tentative settlement in a separate class action suit involving similar loss prevention claims (the "Curley suit"). The Curley suit had been brought in New Jersey federal district court by a different group of former CFI employees that did not include Adams. As part of the proposed Curley settlement, the parties to that agreement filed a joint motion in the Massachusetts bankruptcy court requesting the creation of a mandatory class that would include all loss prevention claimants who had filed proofs of claim in the Massachusetts bankruptcy proceeding (e.g., Adams). Moreover, the parties further requested that the Massachusetts bankruptcy court use the Curley settlement agreement as a vehicle for estimating and discharging all of the loss prevention claims alleged by individuals in this newly created class. Adams objected to this motion. On August 30, 1993, the bankruptcy court granted the motion. Adams appealed to the Massachusetts federal district court, and the district court affirmed. Additionally, the New Jersey district court ultimately approved, and the Third Circuit affirmed, the proposed settlement agreement in the Curley suit. See Curley v. Cumberland Farms, Inc., 27 F.3d 556 (3d Cir.1994).
 
 II.
 Discussion
 
 4
 On appeal to this court, Adams's principal complaint is that the bankruptcy court lacked the authority to enter a final order discharging her claims. Adams also raises several additional arguments including an attack on the bankruptcy court's estimation of her claims and an assertion that the bankruptcy court's order violated her Seventh Amendment right to a jury trial. We begin with a brief overview of the statutory framework and follow with a discussion of Adams's assignments of error.
 
 A. Statutory Overview
 
 5
 Title 28 U.S.C. § 1334 vests in the district court a broad grant of subject-matter jurisdiction over all bankruptcy-related matters, expressly providing that the "district court shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b); see also Celotex Corp. v. Edwards, 115 S.Ct. 1493, 1498-99 (1995) (discussing comprehensive scope of § 1334 jurisdictional grant). The bankruptcy court, in turn, is authorized to hear matters, not as an independent entity, but as "a unit of the district court." 28 U.S.C. § 151. Subject-matter jurisdiction remains in the district court, which is authorized, in appropriate circumstances, to refer matters "to the bankruptcy judges of th[at] district." Id. § 157; cf. Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) (holding unconstitutional previous statutory scheme that authorized bankruptcy courts to exercise independently all jurisdiction conferred to the district courts under the bankruptcy laws). The district court's power of referral extends to any case or proceeding for which it has subject-matter jurisdiction under § 1334. See 28 U.S.C. § 157. The district court, however, may withdraw any matter referred under this provision for cause shown on its own motion or by the request of either party. Id. § 157(d).
 
 
 6
 While the district court may refer all matters for which it has jurisdiction under § 1334, the power of the bankruptcy judge to enter final orders in a referred proceeding is limited. See 28 U.S.C. § 157. In general, a bankruptcy judge may hear and finally determine only core bankruptcy proceedings. Id. § 157(a). Core proceedings are those that involve rights that are created by, and depend on, the bankruptcy laws for their existence. In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991); see also In re Arnold Print Works, Inc., 815 F.2d 165, 166-67 (1st Cir.1987) (reading the legislative history as indicating that a bankruptcy court's core authority should be interpreted broadly). Section 157 sets forth a nonexhaustive list of "core proceedings" that includes such obvious matters as "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B), as well as a final broadly-phrased catchall covering most "other proceedings affecting the liquidation of the assets of the estate," id. § 157(b)(2)(O).
 
 
 7
 A bankruptcy judge may also hear a properly referred non-core proceeding otherwise falling within the district court's bankruptcy jurisdiction, but, in general, may only issue proposed findings of fact and recommended conclusions of law subject to the district court's de novo review. Id. § 157(c)(1). This non-core authority extends to those matters that, while not directly dependent on the bankruptcy laws for their existence, are nonetheless sufficiently connected to the restructuring of the debtor/creditor relationship to come within the district court's broad jurisdictional grant. The bankruptcy court is authorized, on its own motion or on the "timely motion of a party," to determine whether a proceeding comes within the court's core or non-core authority. Id. § 157(b)(3). Finally, with the consent of the parties, a bankruptcy court may hear and finally determine non-core proceedings within the district court's bankruptcy jurisdiction. Id. § 157(c)(2).
 
 
 8
 Significantly, personal injury tort and wrongful death claims are afforded special status under the bankruptcy laws. Several express exceptions address and limit the authority of the bankruptcy court over such claims. See, e.g., 28 U.S.C. § 157(b)(2)(B), (O), and § 157(b)(5).[1] For example, the estimation of unliquidated or contingent personal injury tort claims for the purposes of distribution is explicitly excluded from § 157's list of core proceedings. Id. § 157(b)(2)(B). Moreover, the district court is instructed to order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending or in the district in which the claims arose. Id. § 157(b)(5). This special status apparently stems from Congress's recognition that most personal injury tort and wrongful death victims stand in a somewhat different relationship with the bankruptcy debtor because they did not voluntarily enter into dealings with the debtor (and accept the risk of loss) in the same sense as traditional bankruptcy claimants. See Matter of Poole Funeral Chapel, Inc., 63 B.R. 527, 530 (Bankr.N.D.Ala.1986) (quoting statements of Sen. DeConcini).
 
 B. Personal Injury Torts
 
 9
 Adams challenges the bankruptcy court's authority to enter a final order with respect to her claims. Essentially, she contests the bankruptcy court's implicit determination that her claims constituted core proceedings. Adams argues that her claims are non-core because they fall within at least one of several specific exceptions provided for "personal injury tort" claims. Therefore, she contends that, because the proceeding was non-core, the bankruptcy court lacked the authority to enter a final order effectively estimating and discharging her claims.[2]
 
 
 10
 Whether or not Adams's claims constitute personal injury tort claims is a close question. Compare In re Atron Inc. of Michigan, 172 B.R. 541, 542-45 (Bankr.W.D.Mich.1994) ("personal injury tort" should be read narrowly to exclude emotional distress and other nontraditional personal injury claims), with Poole, 63 B.R. at 529-30 ("personal injury tort" should be read broadly to include claims for emotional and mental distress). We decline, however, to reach the issue in this case. Adams failed to argue that her claims constituted personal injury tort claims in her objection to the joint motion before the bankruptcy court and, again, in her opening brief before the district court. Accordingly, she has waived consideration of the issue on appeal to this court. See, e.g., Fish Market Nominee Corp. v. Pelofsky, 72 F.3d 4, 6 (1st Cir.1995) (arguments not raised in bankruptcy court are waived on appeal); In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir.1993) (same).
 
 
 11
 At bottom, Adams's claim is that she was denied her right to an Article III judge. That right, which derives from the language of Article III, § 1, is a personal right and is subject to waiver upon a party's failure to assert it. See Commodity Future Trading Comm'n v. Schor, 478 U.S. 833, 848-50 (1986). Schor, however, makes clear that Article III, § 1, protects other non-waivable institutional interests by barring "congressional attempts to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating constitutional courts." Id. at 850 (citations and quotation marks omitted). No such concerns are at issue in this case. The present appeal does not involve a challenge to Congress's allocation of authority to a non-Article III bankruptcy judge to resolve personal injury and wrongful death claims. Indeed, the specific provisions in question, viz 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5), strictly limit the authority of bankruptcy judges with respect to personal injury and wrongful death claims.
 
 
 12
 Though, in extraordinary cases, we may make an exception to the raise-or-waive rule where our failure to do so would result in a gross miscarriage of justice, see Credit Francais Int'l v. Bio-Vita, Ltd., 78 F.3d 698, 709 (1st Cir.1996), Adams has not persuaded us that such an exception is warranted in this case. The effect of the bankruptcy court's order did not completely deprive Adams of a remedy for her alleged injuries. Instead, the ruling simply had the effect of estimating the value of her unliquidated tort claims by ordering her to participate in the Curley settlement agreement. Because, as we explain infra, Adams has failed to persuade us that the Curley settlement will provide an unreasonable estimation, we are likewise unpersuaded that giving effect to the bankruptcy court's order will result in a substantial miscarriage of justice.
 
 C. Other Matters
 
 13
 In her reply brief, Adams directly attacks the bankruptcy court's use of the class action settlement as a vehicle for estimating her claims. While title 11 authorizes the bankruptcy court to estimate unliquidated and contingent claims when necessary for the prompt administration of the bankruptcy estate, see 11 U.S.C. § 502(c), it does not provide methods for conducting such estimations. Therefore, in estimating claims, "bankruptcy courts should use whatever method is best suited to the particular circumstances." Lawrence P. King, 3 Collier on Bankruptcy p 502.03, at 502-76 (15th ed.1995). The bankruptcy courts are afforded substantial deference in this area, and errors assigned both to its estimates and its methods for achieving such estimates generally will be reviewed only for an abuse of discretion. Matter of Continental Airlines, 981 F.2d 1450, 1461 (5th Cir.1993); Bittner v. Borne Chem. Co., 691 F.2d 134, 136 (3d Cir.1982). Moreover, in this case, because Adams did not attack the actual estimates in her opening brief, she has, in fact, waived consideration of this issue absent a showing that the estimates would result in a clear miscarriage of justice. See Indian Motocycle Assocs. v. Massachusetts Hous. Fin. Agency, 66 F.3d 1246, 1253 n. 12 (1st Cir.1995).
 
 
 14
 On the particulars of this case, Adams has failed to convince us that the bankruptcy court's decision to order her participation in the Curley settlement constituted an abuse of discretion, much less a clear miscarriage of justice. The claims asserted in the Curley action were brought by employees similarly situated to Adams, and arose from essentially the same scheme that Adams alleges. In general, we find no reason to think that a court-approved settlement in such a strikingly parallel proceeding would not provide a reasonable benchmark for estimating the value of Adams's claims. Though there may be reasons that such a method for estimation would not be appropriate in other cases, Adams has not provided us with any compelling reason for finding it inappropriate here.
 
 
 15
 Adams raises several additional issues, including a claim that the bankruptcy court's order deprived her of her Seventh Amendment right to a jury trial. We find these additional claims either waived, substantially without merit, or both. Specifically, with respect to Adams's Seventh Amendment argument, filing a proof of claim in a bankruptcy proceeding, as Adams has done, generally waives any right to a jury trial. See Langenkamp v. Culp, 490 U.S. 42, 44-45 (1990) (filing proof of claim invokes bankruptcy court's equitable jurisdiction and generally waives jury trial right). We do note, however, that 28 U.S.C. § 1411(a), may restrict this general rule with respect to personal injury and wrongful death claims.[3] Nonetheless, Adams has forfeited the application of this provision by failing to argue that her claims constituted personal injury tort claims to the courts below. See, e.g., In re Mark Bell, 992 F.2d at 9.
 
 III.
 Conclusion
 
 16
 For the foregoing reasons, we affirm the decision of the district court.
 
 
 17
 * * *
 
 
 
 [1]
 Subsection 157(b)(2) provides, in relevant part, that core proceedings include:
 (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11
 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
 28 U.S.C. § 157(b)(2) (emphasis added). Subsection 157(b)(5) provides that:
 The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
 28 U.S.C. § 157(b)(5) (emphasis added).
 
 
 [2]
 Adams does not contend that her claims against the estate were outside the district court's broad grant of subject-matter jurisdiction under 28 U.S.C. § 1334. This is not surprising. The district court's "related to" jurisdiction under § 1334(b) is expansive. See Celotex Corp. v. Edwards, 115 S.Ct. 1493, 1499 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth."). " 'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " In re G.S.F., 938 at 1475 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984)). We have little doubt that proceedings, such as this one, involving the estimation and discharge of proofs of claim filed against the estate by a bankruptcy creditor come within this broad range
 
 
 [3]
 28 U.S.C. § 1411(a) provides in relevant part that
 this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim.