**In re G–I HOLDINGS, INC., et al. (f/k/a GAF Corp.), Debtors.**

**Official Committee of Asbestos Claimants, Petitioner/Movant,**

v.

**G–I Holdings, Inc., Respondent.**

**G–I Holdings, Inc. f/k/a GAF Corporation and Building Materials Corporation of America, Plaintiffs,**

v.

**Ruddles A. Bennett, Jr., et al., Defendants.**

**Legal Representative of Present & Future Holders of Asbestos–Related Demands, Petitioner/Movant,**

v.

**G–I Holdings, Inc., Respondent.**

**Bankruptcy Nos. 01–30135(RG), 01–38790(RG).**
**Civil Nos. 02–2735(WGB), 02–3626(WGB), 02–3971(WGB).**

United States District Court, D. New Jersey.

May 13, 2003.

---

Weil, Gotshal & Manges, LLP, by Martin J. Bienenstock, Deryck A. Palmer, Kathryn L. Turner, New York City, Skadden, Arps, Slate, Meagher & Flom, LLP, by Albert R. Turkus, McKee Nelson, LLP, by William F. Nelson, J. Bradford Anwyll, Jonathan Z. Ackerman, Washington, DC, Riker, Danzig, Scherer, Hyland & Perretti, LLP, by Dennis J. O'Grady, Mark E. Hall, Morristown, NJ, for G–I Holdings, Inc.

Saiber, Schlesinger, Satz & Goldstein, LLC, by David R. Gross, Newark, NJ, Budd, Larner, Rosenbaum, Greenberg & Sade, P.C., by Sonya M. Longo, Short Hills, NJ, Keating, Muething & Klekamp, P.L.L., by Kevin E. Irwin, Michael L. Scheier, Cincinnati, OH, for Legal Representative of Present & Future Holders of Asbestos–Related Demands.

Goldstein, Lem & Isaacson, P.C., by Nancy Isaacson, Springfield, NJ, Baron &

Budd, P.C., by Alan B. Rich, Dallas, TX, for Ruddles A. Bennett, Jr., et al.

Lowenstein Sandler, P.C., by Jeffrey D. Prol, Kenneth A. Rosen, John K. Sherwood, Roseland, NJ, Elihu Inselbuch, Caplin & Drysdale, Chtd., New York City, Peter Van N. Lockwood, Trevor W. Swett, Kimberly N. Brown, Caplin & Drysdale, Chtd., Washington, DC, for the Official Committee of Asbestos Claimants.

### *OPINION*

BASSLER, District Judge.

This Opinion involves three separate motions to withdraw the reference to the Bankruptcy Court. Each motion was assigned a civil proceeding docket number.

In Civil Action 02–3626, Petitioners Ruddles A. Bennett, Jr. et al ("Individual Defendants") move for withdrawal of reference to the Bankruptcy Court of the adversary proceeding regarding the issue of the successor liability of Building Materials Corporation of America ("BMCA") for the asbestos torts of GAF Corporation ("GAF Co.") (the "Adversary Proceeding").

In Civil Action 02–2735, Petitioners The Official Committee of Asbestos Claimants ("Committee") move for withdrawal of reference to the Bankruptcy Court of the estimation proceedings (the "Estimation Proceeding") in the ongoing chapter 11 bankruptcy case of G–I Holdings, Inc. ("G–I Holdings") currently being administered by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). *In re G–I Holdings, Inc.*, 01–30135(RG).

In Civil Action 02–3971, Petitioner The Legal Representative of Future Asbestos Claimants moves for withdrawal of reference to the Bankruptcy Court of the estimation proceeding and for withdrawal of G–I Holdings, Inc.'s motion to set a bar

date for filing of asbestos claims (the "Bar Date Motion").

This Court now withdraws the reference to the Bankruptcy Court of the Adversary Proceeding regarding the successor liability of BMCA and denies the request to withdraw the reference of the Estimation Proceedings and Bar Date Motions.

## I. BACKGROUND

### A. General History

G–I Holdings f/k/a GAF Co. ("Debtor") filed for chapter 11 bankruptcy on January 5, 2001, and continues to operate as a debtor in possession.[1] GAF Co. was a building materials company that produced asbestos products. Debtor's affiliate, ACI also commenced a chapter 11 case, and the two cases are being administered jointly.[2] Debtor owns substantially all the stock in Building Materials Co. of America ("BMCA") d/b/a GAF Materials. BMCA, which is not in bankruptcy, is a subsidiary of Debtor. BMCA was formed to own distinct assets and operations that never used asbestos. Through a series of internal restructuring transactions, BMCA purchased the operating assets of GAF Co. and a company, GAF BMC, was created, which contractually retained all liability for future asbestos-related liabilities and agreed to indemnify and defend BMCA against any claims. (Tr. 33:12–17). GAF BMC is a wholly owned subsidiary of G–I Holdings, Inc. Both GAF BMC and G–I Holdings, Inc. continued to be available to creditors to satisfy asbestos claims from the companies' prior operations. In fact,

for seven years, GAF Co. and G–I Holdings, Inc. paid over $750 million to asbestos plaintiffs. No asbestos claims were filed against BMCA until G–I Holdings, Inc. was in danger of filing for bankruptcy. Indeed, the Personal Injury Tort and Wrongful Death ("PITWD") claims brought against G–I Holdings, Inc. were the main force which pushed Debtor to seek chapter 11 protection. After suing only GAF BMC and G–I Holdings, Inc. for years, claimants began naming BMCA as a defendant according to theories of successor liability and alter ego liability.

Shortly after G–I Holdings, Inc. filed for chapter 11 bankruptcy protection, on January 18, 2001, the United States trustee appointed The Official Committee of Asbestos Claimants (the "Committee"), a statutory committee of asbestos claimants. On October 10, 2001, upon Debtor's motion, C. Judson Hamlin was appointed by the Bankruptcy Court to serve as the Legal Representative within the meaning of Bankruptcy Code § 524(b) for present and future claimants.

### B. Procedural History:

For purposes of clarity, the Court will separately outline the procedural history of each motion.

#### 1. G–I Holdings, Inc. v. Ruddles et al, 02–CV–03626

On February 7, 2001 Debtor filed an adversary proceeding in the Bankruptcy Court seeking declaratory relief against

---

**1.** On January 16, 2003, Chief Bankruptcy Judge, Gambardella denied the Official Committee of Asbestos Claimants' motion for appointment of a chapter 11 trustee. That decision is currently on appeal before this Court. (Civ. No. 03–842(WGB).)

**2.** ACI is in chapter 11 because of the claims lodged against it, principally relating to tax

claims and its financial distress. It is an affiliate of the Debtor, being jointly administered. It will have a big impact on the ultimate value to be distributed in this case to claimants other than the IRS, but the parties agree that it is in no way a factor in terms of any of the current reference withdrawal motions.

seven asbestos claimants who sued Debtor and BMCA for PITWD claims. Although Debtor originally sought to certify a class of asbestos claimants similarly situated to the Individual Defendants, it subsequently decided not to pursue class certification. Debtor hopes to receive a favorable declaratory judgment in the adversary proceeding, insulating BMCA from liability for GAF Co.'s asbestos torts.

The Committee filed an application to intervene in the adversary proceeding and on November 9, 2001, the Court allowed the Committee to intervene as a defendant. The Committee filed an Answer and Counterclaim setting forth arguments for its contention that BMCA bears responsibility for GAF Co.'s asbestos torts. Debtor and BMCA filed their Answer to the Committee's Counterclaims on or about November 29, 2001. On May 3, 2002, Debtor and BMCA filed for summary judgment in the Bankruptcy Court seeking a dispositive ruling on both counts of the Complaint in the adversary proceeding. Debtor's summary judgment motion is still pending in the Bankruptcy Court. On July 1, 2002 the Individual Defendants filed a motion to withdraw the reference of the adversary proceeding regarding the issue of successor liability to this Court.[3] (This motion will be referred to as the "Adversary Proceeding").

### 2. *G–I Holdings, Inc. v. Official Committee of Asbestos Claimants, 02–CV–02735*

On May 23, 2002, the Committee filed a motion for partial withdrawal of reference as to Debtor's application for estimation of claims under 11 U.S.C. § 502(c). On June 19, 2002, Debtor filed its Estimation Motion. On July 19, 2002, Debtor filed its objection to the Committee's withdrawal motion, and the Committee filed its reply on August 7, 2002. On July 15, 2002, the Committee filed a motion to stay proceedings in the Bankruptcy Court. (This motion will be referred to as the "Estimation Proceeding").

### 3. *Legal Representative v. G–I Holdings, Inc., 02–CV–03971*

On August 9, 2002, the Legal Representative filed its own motion to withdraw the reference of Debtor's application for estimation, and in addition requested withdrawal of Debtor's motion to fix a final date for filing proofs of claim. (This motion will be referred to as the "Bar Date Motion").

## II. *DISCUSSION*

### A. *Bankruptcy Jurisdiction*

#### 1. *Motions to Withdraw Reference*

The District Court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. *See* 28 U.S.C. § 1334(b). The Bankruptcy Court exercises such jurisdiction under a standing order of reference, as provided by 28 U.S.C. § 157(a). Once a Title 11 proceeding has been referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for mandatory and permissive withdrawal.

28 U.S.C. 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. the district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding re-

---

**3.** If withdrawal of reference of the adversary proceeding is granted, this Court may sua sponte withdraw the reference and dispose of Debtor's summary judgment motion.

quires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Withdrawal from the Bankruptcy Court is mandatory under 28 U.S.C. § 157(d), where the district court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States. Courts have interpreted § 157(d) to mandate withdrawal "only if [the] court can make an affirmative determination that resolution of the claims will require substantial and material consideration of ... non[bankruptcy] Code statutes." *In re White Motor Corp.*, 42 B.R. 693, 705 (N.D.Ohio 1984).

28 U.S.C. § 157(d) provides that permissive withdrawal is appropriate "for cause shown." What constitutes "cause" to withdraw is not evident from the statute, *see NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 907 (D.Del. 1996) (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir.1990)), but courts in the Third Circuit and elsewhere have articulated a number of factors for the District Court to consider: Whether the proceeding is core or non-core, judicial efficiency, uniformity and economy, and discouraging forum shopping. *See In re Pruitt*, 910 F.2d at 1168; *Prof'l Ins. Mgmt. v. Ohio Cas. Group of Ins. Cos. (In re Prof'l Ins. Mgmt.)*, 2000 WL 679247 at *5 (D.N.J. May 25, 2000); *Times Mirror Magazines v. Las Vegas Sports News, L.L.C.*, 1999 WL 179749 at *2 (E.D.Pa.1999).

### 2. *Case Management in Bankruptcy*

The importance of case management in large bankruptcy reorganizations cannot be overstated. Efficient case management is ever more imperative in mass tort bankruptcies. The Court recognizes its own responsibility, as well as that of the parties, to do whatever is necessary to pre-serve the debtor's estate. Delay in the administration of the case and unnecessary litigation expenses will tax the estate to the detriment of the creditors in the chapter 11 case. Practical as well as judicial efficiency considerations must be taken into account in order to make an appropriate decision as to the withdrawal motions currently before the Court.

Although much of the bankruptcy process is administrative, bankruptcy courts also supervise litigation conducted under streamlined, technical procedures. Bankruptcy courts function as an adjunct of the district court. For this reason the law permits withdrawals of the reference of cases in order to return principal responsibility for the case to the district court. District courts, however, rarely invoke this supervisory device. *See* Edith H. Jones, *Rough Justice in Mass Future Claims: Should Bankruptcy Courts Direct Tort Reform?* 76 Tex.L.Rev. 1695, 1702–03 (1998). Bankruptcy courts exercise surprisingly far-reaching substantive influence. They frequently adjudicate and issue written opinions on matters of state law, including the UCC, tax, and even family law issues. *Id.*

At a logical extreme of the issue of judicial economy is the idea that everything would be withdrawn because one way or another everything that happens in the bankruptcy court is reviewable by the district court; this would eliminate review. Obviously, that is not what Congress had in mind. The Bankruptcy Court has already been involved in this case, and is familiar with the facts and issues. (4/14/03 Hearing Tr. 95:13–22).

The partnership between the Bankruptcy Court and this Court is essential to ensuring efficient resolution of mass tort bankruptcies such as this one.

## B. *Adversary Proceeding*

■ The ultimate issue in this Adversary Proceeding is whether liability for the asbestos torts of the former GAF Co. have flowed to the Debtor's non-bankrupt subsidiary BMCA, under doctrines of piercing the corporate veil or successor liability. Sound judicial administration, efficiency, and fairness require that the issue be resolved before this Court.

■ This is a non-core proceeding within the meaning of 28 U.S.C. § 157(b)(1), because the successor liability and alter ego claims at stake are not claims against the assets of the estate, and they do not deal with the relationships between the Debtor and its creditors or its shareholder. Instead the claims target the assets of GAF Materials, a non-debtor subsidiary of the Debtor. Case law dealing with bankruptcy litigation of successor liability and veil piercing issues confirms that this action is not a core proceeding. "This case . . . obviously could exist outside of bankruptcy. The concepts of successor liability and alter-ego identity, which are involved in this matter, are not created by the Bankruptcy Code and do not require resort to any concept peculiar to bankruptcy for their resolution." *Composition Roofers Union Local No. 30 Welfare Trust Fund v. Roman, Inc.*, No. Civ. A. 95–0335, 1998 WL 720126, *3 (E.D.Pa. Sept.9, 1998). Similarly, in *Davis v. Merv Griffin Co.*, 128 B.R. 78 (D.N.J.1991), this Court rejected a debtor's argument that a third-party's suit against the debtor's principal should be classified as a core proceeding because of the plaintiff's allegation that the principal and the debtor were alter egos. The Court squarely held that "the so-called alter ego action . . . is not a core proceeding." *Id.* Although not independently determinative, the non-core nature of this proceeding weighs in favor of withdrawal. In non-core proceedings, the District Court reserves actual decision-making authority and the Bankruptcy Court's role is limited to submitting proposed findings of fact and conclusions of law, subject to de novo review. *Id.* § 157(c)(1); *see Halper v. Halper*, 164 F.3d 830, 836 & n. 7 (3d Cir.1999). "Efficiency [will be] enhanced by withdrawal of the reference if non-core issues predominate." *In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999, 1008 (9th Cir.1997).

The Individual Defendants argue that invocation of their right to a jury trial is grounds for withdrawal. To support their position, they cite the United States Supreme Court's decision in *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In *Granfinanciera*, the Supreme Court laid down the framework for applying the Seventh Amendment jury trial right in the context of adversary proceedings in bankruptcy. For purposes of the present motion, the Court need not, and does not determine the viability of the Individual Defendants' jury right claims. It will suffice to say that the arguments raised concerning the equitable and/or legal origins of actions to pierce the corporate veil, and the implications of those origins on jury trial rights would be more properly resolved by this Court given its comparative expertise in dealing with issues of due process.

Other considerations of judicial economy and deterrence of forum shopping indicate that withdrawal is appropriate. The partial withdrawal of the reference of the Adversary Proceeding will also speed the bankruptcy to resolution and conserve scarce resources of the parties and of both courts. Because this proceeding entails exclusively state law claims against a non-debtor, it is in the Court's best interest to adjudicate the nonbankruptcy dispute once, while the Bankruptcy Court contin-

ues to administer the chapter 11 reorganization and conduct other common bankruptcy proceedings.

Debtor argues that the Committee and the Individual Defendants are simply forum shopping because the same issues that arise in the successor liability claims have already been litigated in the Committee's substantive consolidation motion.[4] Debtor's arguments are unpersuasive. The successor liability issues arise in a separate adversary proceeding. In fact, the Bankruptcy Judge specifically stated that "[f]or purposes of the instant proceeding, any determination of successor liability will not have any res judicata effect on the proceedings." (Judge Gambardella's Opinion in Substantive Consolidation Proceeding pg. 19). On the limited question whether "the Committee ... ma[d]e a prima facie case of successor liability for purposes of showing a likelihood of success on the merits regarding a request for ... injunctive relief by way of interim substantive consolidation," the Bankruptcy Court repeatedly found "the existence of bona fide factual disputes" and denied the Committee's motion. (*Id.* at 31, 40, 44). The substantive consolidation proceeding dealt only in a cursory way with successor liability, expressly avoided the merits of that issue, and are accorded no preclusive effect in any other context or proceeding. It is precisely the Bankruptcy Judge's avoidance of these issues that indicates the Bankruptcy Court has not made a serious investment of time grappling with succes-

sor liability, and renders Debtor's judicial economy argument meritless.

### C. *Estimation Proceeding*

G–I Holdings has approximately 150,000 asbestos claims pending against it. Outside of bankruptcy, it takes years and hundreds of millions of dollars in legal fees to reduce claims to judgments or settlements. 11 U.S.C. § 502 deals with the allowance of claims or interests in bankruptcy. § 502(c) provides in relevant part that "there shall be estimated for purpose of allowance under this section-(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case...." This estimation can drastically reduce the time and expense involved and can transfer hundreds of millions of dollars from legal fees to payment to legitimate claimants. On June 19, 2002, G–I Holdings filed with the Bankruptcy Court a motion to establish a method to estimate inexpensively 150,000 individual claims. After moving to withdraw the reference of the estimation proceeding, the Committee filed its own proposal for estimation. Thus there are two estimation proposals.[5]

■■■ The Committee's proposal aims to estimate G–I Holdings' aggregate asbestos liability for purposes of determining voting shares in the chapter 11 plan confirmation process. This is a core proceeding that should be determined by the Bankruptcy Court. *See A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)* 788 F.2d

---

4. At the outset of G–I Holdings' bankruptcy case, the Committee moved for substantive consolidation of BMCA and G–I Holdings' assets for purposes of interim relief. After discovery was had, a three day evidentiary hearing was held and the Bankruptcy Court denied the Committee's motion.

5. The main bone of contention is that G–I Holdings' proposal reforms the traditional chapter 11 reorganization process by effectively liquidating claims at the outset of the process instead of following the more traditional process espoused by the Committee's proposal of estimating aggregate liability for purposes of plan confirmation at the outset of the chapter 11 reorganization and later liquidating the claims.

994 (4th Cir.1986); *In re UNR Indust., Inc.,* 45 B.R. 322 (N.D.Ill.1984); *Newton v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 45 B.R. 827 (S.D.N.Y.1984). On the other hand, G–I Holdings' proposal is a novel estimation approach that attempts to estimate the value of individual asbestos claims, which results in an effective liquidation of those claims. It is unclear if the determination of whether G I Holdings' proposal ought to be followed is a core or non-core proceeding. Initially, the core/non-core determination ought to be made by the Bankruptcy Court. *Gen. Elec. Capital Corp. v. Teo,* 2001 WL 1715777 at *6 (D.N.J.2001); *Travellers Int'l v. Robinson,* 982 F.2d 96, 97–98 (3rd Cir.1992); *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963, 968–969 (D.N.J. 1987); *Hatzel & Buehler Inc. v. Central Hudson Gas & Elec. Corp.,* 106 B.R. 367, 368 (D.Del.1989).

Given its understanding of the facts and issue in this case, and knowledge of the chapter 11 reorganization process, the Bankruptcy Court should attempt the estimation proceeding in the first instance. If the Bankruptcy Court determines that the estimation is a core proceeding, then it may conduct the proceeding and enter a final order. To the extent that the determination is a non-core proceeding under 28 U.S.C. § 157(b)(2)(B), the Bankruptcy Court can recommend the estimation method to this Court pursuant to 28 U.S.C. § 157(c). This court has recently withdrawn a tax issue in a related proceeding, and will be withdrawing the successor liability issue in the adversary proceeding. This Court is loath to withdraw the entire determination of the estimation proceeding at this time because doing so would essentially gut the bankruptcy court of the entire chapter 11 case.

Both the Bankruptcy Court and this Court are equally qualified to conduct the estimation proceeding, however, judicial economy considerations indicate that the bankruptcy court may be more appropriate. The Third Circuit in *In re Pruitt,* 910 F.2d at 1160 (3rd Cir.1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985)) has set forth the following factors for consideration of whether a case or proceeding should be permissively withdrawn:

> The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources and expediting the bankruptcy process.

910 F.2d at 1168.

The requirement to show cause "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *See Hatzel & Buehler,* 106 B.R. 367, 371 (D.Del.1989) (quoting *Allard v. Benjamin (In re DeLorean Motor Co.),* 49 B.R. at 900, 912 (Bankr. E.D.Mich.1985)). For non-core or "related to" proceedings, Congress specifically provided in § 157(c) that bankruptcy courts may propose findings of fact and conclusions of law to the district court. The enactment of this section demonstrates Congressional intent to have bankruptcy courts remain involved in the adjudication of non-core proceedings. *See also Collier on Bankruptcy,* 15th ed. ¶ 3.03[1] ("... because of the automatic reference, the bankruptcy judge may enter proposed findings of fact and conclusions of law, which in turn will be considered by the district court, which will enter the dispositive order or judgment.") Section 157(c) is predicated upon the "assumption that this will be the alternative most frequently employed, and in fact it has been ..." 28 U.S.C. § 157(c)(1) provides as follows:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

The Committee has not established cause for withdrawal of the reference. The Committee argues that because this Court will have to approve estimation for purposes of distribution at some point in the chapter 11 case, it should do so now. The Committee offers no reason why the Bankruptcy Court with over 24 months experience in this mass tort case should not do so or recommend a result to this Court to the extent a non-core proceeding is involved. As indicated above, the proposal recommended by the Committee will not require this Court's final approval because the Committee is seeking a determination of G–I Holdings' total asbestos liability and not a method to liquidate claims. Only G–I Holdings' method may be non-core, requiring entry of a final order by this Court. Judicial economy is therefore better served by having the Bankruptcy Court retain jurisdiction of the estimation motions.

■ The Committee and Legal Rep cite two mass tort bankruptcy cases where the district court granted withdrawal. *In re Babcock & Wilcox Co.,* 2000 WL 422372 at *1 (E.D.La.2000), involved a company, that incorporates asbestos into its products, that was pushed to bankruptcy because of the onslaught of 400,000 asbestos claims lodged against it between the late 1970s and 1999. Preliminarily, the Court points

out that *Babcock* came before the district court because notice had been taken that the bankruptcy courts were overly burdened. The parties, Babcock & Wilcox sought to establish a trust to compensate present and future asbestos claimants. The district court granted withdrawal as to the personal injury tort claims. One of the courts' major concerns in that case was "whether the determination as to the threshold validity of asbestos personal injury claims constituted core proceedings for the bankruptcy judge to decide, a contrary decision by the Fifth Circuit could [have required] that the issues be relitigated in [the district] court." *Id.* at *4. The district court granted the withdrawal primarily because it was unsure whether the Fifth Circuit would ultimately determine that the bankruptcy court did not have jurisdiction. No such conflict exists in this case. It is undisputed that the Bankruptcy Court has the authority to determine if an estimation proceeding is fair, and inasmuch as it finds the proceeding non-core, to make proposals and conclusions for review by this Court.

The second case cited by the Committee and Legal Representative is *In re A.H. Robins Co.,* 88 B.R. 742 (E.D.Va.1988), *aff'd* 880 F.2d 694 (4th Cir.1989), involved the bankruptcy of a Dalkon Shield manufacturer. In that case the district court sua sponte withdrew the reference because a major aspect of the case required the services of an Article III judge. That case involved a much more protracted bankruptcy case. Although the district court ultimately made the estimation determination, no explanation was given for why the district court was better equipped than the bankruptcy court to make that decision. "There were enormous variations in the estimates presented by the parties, from 1.22 billion dollars to nearly 7.2 billion dollars, and the variations were linked to

the assumptions used. Judge Merhige arrived at an estimate of 2.475 billion dollars 'payable over a reasonable period of time.' No reasoning was provided for this conclusion at the time of its announcement, and none has since been supplied." Brehm, Copas and Vossler, *To Be Or Not To Be: The Undiscovered Country of Claims Estimation in Bankruptcy*, 8 J. Bankr.L. & Prac. 197, 266 (March/April 1999). Although the *A.H. Robins* provides persuasive authority that withdrawal may be had, absent a clear indication of the propriety of that decision, the Court is not persuaded to grant withdrawal on this motion.

 The Legal Representative argues that mandatory withdrawal pursuant to 28 U.S.C. § 157(d) is appropriate. Mandatory withdrawal is to be applied narrowly to ensure bankruptcy cases are litigated in the bankruptcy courts and to prevent § 157(d) from becoming an "escape hatch" from litigating cases under the Bankruptcy Code. *In re Mahlmann*, 149 B.R. 866, 870 (N.D.Ill.1993). This narrow reading of § 157(d) comports with Congressional intent for bankruptcy judges to "act much like a magistrate" with the ability "to enter a final judgment . . . in all proceedings integral to the core bankruptcy functioning of restructuring the obligations of the debtor and his creditors." 130 Con. Rec. H1848 (Daily Ed. March 21, 1984)(Statement of Rep. Kindness). Courts interpreting the term "consideration" under § 157(d) have found that mandatory withdrawal is required only if the proceedings cannot be resolved without "substantial and material consideration of non-bankruptcy laws." *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1006 (D.N.J.1986). The party seeking withdrawal bears the burden of establishing that withdrawal is appropriate. *In re Continental Airlines*, 138 B.R. 442, 445 (D.Del.1992). The determination of which estimation proposal to use is inte-

gral to the chapter 11 reorganization process. It follows therefore that as long as the Bankruptcy Court is presiding over the whole case, it should also determine in the first instance how claims will be resolved. The burden for proving that mandatory withdrawal is in order has not been met here.

### D. *Bar Date Motion*

 The motion to withdraw reference to the Bankruptcy Court of G–I Holdings' Bar Date Motion is also denied. That proceeding is a core proceeding to be heard by the Bankruptcy Court supervising the chapter 11 case.

 The setting of a bar date by its very nature arises only in the context of a bankruptcy case. Bankruptcy Rule 3003 governs the filing of proof of claims and is only applicable in chapter 9 and chapter 11 cases. *See* Fed. R. Bankr.P. 3003(a). The setting of the bar date provides the method by which claims are asserted against a debtor's estate and is a necessary prerequisite to obtaining distribution on behalf of discharged claims. Bar dates implicate specialized bankruptcy issues of discharge and procedure. The Legal Representative has not met its burden of establishing a contravening interest requiring the withdrawal of a core proceeding.

The Legal Representative's argument that the Bar Date Motion is tied to the Estimation Proceeding is inapposite as that proceeding will be conducted by the Bankruptcy Court as well.

### III. *CONCLUSION*

The three motions before the Court are in essence the entire chapter 11 case. If the Court removes all three, virtually nothing will be left to the Bankruptcy Court. If that were to happen, then the bifurcation between the two courts makes little sense.

For the reasons set forth in this Opinion, withdrawal of the reference to the Bankruptcy Court is granted as to the Adversary Proceeding concerning the successor liability of BMCA for GAF Co.'s asbestos torts. The remaining two withdrawal of reference motions as to the Estimation and Bar Date Motions are denied. An appropriate Order follows.

### ORDER

This matter having come before the Court on (1) the motion by the Official Committee of Asbestos Claimants of G–I Holdings, Inc. for partial withdrawal of the reference pursuant to 28 U.S.C. § 157(d) for estimation of personal injury tort and wrongful death claims under 11 U.S.C. § 502(c) (Civ. No. 02–2735(WGB)); (2) the motion by individual defendants and the Official Committee of Asbestos Claimants of G–I Holdings, Inc. for partial withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) with respect to Adversary Proceeding No. 01–3066(RG) (Civ. No. 02–3626(WGB)); and (3) the motion by the Legal Representative of Present and Future Holders of Asbestos–Related Demands for partial withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) as to the Debtor's application to estimate claims under 11 U.S.C. § 502(c) and Debtor's motion to fix the final date for filing proofs of claim (Civ. No. 02–3971(WGB)); and

The Court having considered the submissions of the parties and held oral argument on each of these three motions at a joint hearing on April 14, 2003; and

For the reasons set forth in the Opinion issued this day; and

For good cause shown;

It is this 13th day of May, 2003 hereby ORDERED as follows:

1. The motion by the Official Committee to withdraw the reference for estimation of personal tort and wrongful death claims (Civ. No. 02–2735(WGB)) is **denied;** and

2. The motion by the individual defendants and the Official Committee to withdraw the reference with respect to Adversary Proceeding No. 01–3066(RG) (Civ. No. 02–3626(WGB)) is **granted** pursuant to 28 U.S.C. § 157(d) and this Court shall henceforth exercise jurisdiction over this matter; and

3. The motion by the Legal Representative to withdraw the reference for estimation of personal tort and wrongful death claims is **denied,** and the motion by the Legal Representative to withdraw the reference with respect to the Debtor's motion to fix the final date for filing proofs of claim (Civ. No. 02–3971(WGB)) is **denied;** and

The Clerk shall forward copies of this Order to all counsel of record.